Jordan K. Cameron (12051)
   *jordan@cameronringwood.com*
**CAMERON RINGWOOD, LC**
6975 South Union Park Avenue
Suite 600
Cottonwood Heights, UT 84047
Telephone: (385) 463-2425

*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| POLICYSCOUT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>DAN HUMAN, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No.:<br><br>Judge:<br><br>**TIER 2** |

Plaintiff PolicyScout, LLC ("PolicyScout"), by and through counsel, hereby complains against Defendant Dan Human ("Human"), and alleges as follows:

### RULE 26(c)(3) TIER 2 DESIGNATION

This case arises under Tier 3 as described in Rule 26(c)(3) of the Utah Rules of Civil Procedure.

### PARTIES

1.    PolicyScout, LLC is a Delaware limited liability company with its principal place of business in Salt Lake County, Utah.

2. Dan Human is an individual who has engaged in threatening and harassing conduct aimed at PolicyScout in Utah in an attempt to extort money from PolicyScout on false pretenses.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Utah Code § 78A-5-102.

4. Venue is proper pursuant to Utah Code §§ 78B-3-307.

## GENERAL ALLEGATIONS

5. PolicyScout connects consumers interested in various insurance options to insurance companies.

6. Consumers who are interested in certain types of insurance either contact, or request contact from, PolicyScout, who then connects the consumers with licensed insurance brokers in their area.

7. PolicyScout does not sell products or services to consumers.

8. PolicyScout only communicates with consumers who first submit their information requesting contact through PolicyScout's own websites or through websites of PolicyScout affiliates.

9. PolicyScout scrubs against the national Do Not Call list.

10. PolicyScout does not use an automatic telephone dialing system.

11. PolicyScout does not use pre-recorded messaged or artificial voice.

12. PolicyScout only places calls using a live voice operator.

13. PolicyScout does not initiate "cold" communication, but rather, it only responds after consumers have initiated contact with PolicyScout, and completed an opt-in process.

14. Unless a consumer submits a phone number to PolicyScout (either through PolicyScout's websites or its affiliate websites), PolicyScout will never become aware of, or possess, the phone number.

15. On November 21, 2022, Human engaged a website from an IP address located in Missouri, filled out a prior express written consent form, and submitted it.

16. Human provided his personal information, including his name and phone number ending 2988.

17. The consent language the website stated, "By selecting 'Yes,' I prove my signature consenting to contact from . . . PolicyScout and select Marketing Partners at the number [number] regarding products or services via live, automated or pre-recorded telephone call, text, or email, even if that number is on any local, state or nations 'Do Not call' list. I consent to these telephone calls begin monitored or recorded. U understand that my telephone company may impose charges on me for these contacts, and I am not required to enter into this agreement as a condition of any purchase. I understand I can revoke this consent at any time."

18. The identified organizations clearly and conspicuously identified PolicyScout as well as various registered dbas of PolicyScout.

19. In providing his information, including his telephone number, Human affirmed his desire to receive communications from the listed companies, including PolicyScout, thereby completing the opt-in process. He also established a business relationship with PolicyScout.

20. In reliance on Human's express and implied representations that he desired to be called regarding insurance products, PolicyScout placed several calls to Human.

21. During at least one of the calls in November 2022, Human represented that he was interested in insurance, that he wanted to be connected to an insurance broker who could provide insurance options in his area, and never stated a desire to not be contacted.

22. In reliance on these representations, PolicyScout contacted Human and connected him with an insurance broker.

23. PolicyScout has had not connect with Human since December 2022.

24. In July 2023, Human began engaging in a campaign of threats and demands against PolicyScout.

25. On July 24, 2023, Human sent a letter to PolicyScout wherein Human represented that PolicyScout made more than a dozen calls to him. This statement is false, and Human knew it to be false at the time he made it.

26. Also in the letter, Human implied that he did not invite the calls or otherwise opt-in to receive them, which implied representation is also false.

27. Also in the letter, Human demanded that PolicyScout pay him money, ostensibly for his silence.

28. On or around October 2, 2023, Human sent another letter.

29. Through the October 2, 2023, letter, Human made the same, or similar, misrepresentations that he made in the July 24, 2023, letter, and again demanded money.

30. The foregoing conduct was done with the intent to intimidate and threaten, all with the purpose of unlawfully extorting money from PolicyScout.

31. On information and belief, Human has a practice, or side hustle, of engaging websites by visiting them and providing personal information with the purpose of deceiving

companies into believing he is an interested consumer. He thereafter lays in wait for phone calls, and when received, contacts the companies, claims he did not want to be called and threatens litigation, all with the ultimate plan to extort money from legitimate companies.

32. Human followed this same pattern in this case. Human willfully and voluntarily submitted his information to PolicyScout and opted-in to be called. He further represented to PolicyScout that he was interested in insurance and wanted to be connected to a broker. Human's design was to convince PolicyScout that he was an interested consumer, induce PolicyScout to place phone calls to him, then threaten PolicyScout and its employees with legal action unless PolicyScout paid him an exorbitant sum.

33. Because Human wanted to receive calls, at no point did he ever exercise any of PolicyScout's numerous opt-out mechanism after providing his contact information.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

34. PolicyScout re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

35. There exists a claim and controversy between the parties regarding PolicyScout's compliance with the Telephone Consumer Protection Act ("TCPA").

36. PolicyScout seeks a Declaration from the Court that:

   a. PolicyScout did not for itself, or through others, initiate any telephonic communication to Human in violation of the TCPA.

   b. PolicyScout's opt-in notice satisfies the requirements of the TCPA.

   c. Even if PolicyScout had contacted Human via telephone, the contact would not violate the TCPA in light of Human's prior-written consent and/or the methods of communication used by PolicyScout.

37. PolicyScout requests an award of attorney's fees in an amount the Court determines to be just and equitable.

38. PolicyScout also requests an award of costs pursuant to the Declaratory Judgment Act.

## SECOND CAUSE OF ACTION
(Fraudulent Misrepresentation and Non-Disclosure)

39. PolicyScout re-alleges and incorporates each of the foregoing paragraphs by reference as though set forth fully herein.

40. Human knew that he was not a *bona fide* patron of PolicyScout and was not in the market for insurance.

41. Nevertheless, on November 21, 2022, Human submitted information through an online form through which he expressly and impliedly represented to PolicyScout that he wanted to be called.

42. Later, on at least one call, he further represented that he was interested in insurance related products and wanted to be connected with a broker.

43. In reasonable reliance on Human's express and implied representations, PolicyScout placed several phone calls to Human and connected him with a broker.

44. Human knew that the only purpose of his conduct was to induce PolicyScout to place telephone calls to Human so Human could threaten to bring legal action against

PolicyScout in order to extort a money payment from PolicyScout. But Human never disclosed these material facts.

45. Had Human disclosed these facts, PolicyScout would not have placed calls to Human.

46. Due to Human' intentional failure to disclose important facts, and his express and implied misrepresentation of other important facts, PolicyScout was deceived.

47. Material misrepresentations include:

   a. That Human was interested in insurance;

   b. That Human wanted to be called;

   c. That Human wanted to be connected to a broker.

48. Material concealed facts include:

   a. That Human did not actually have interest in insurance;

   b. That Human was only calling in order to tee up alleged claims of violations of the TCPA and attempt to extort PolicyScout for money damages.

49. Human's intentional obfuscation and misrepresentation of these and other facts caused PolicyScout to believe Human was a legitimate customer, spend valuable employee time and resources contacting Human (which could have been spent talking to legitimate customers), connect Human with an insurance broker.

50. As a result of Human's actions, PolicyScout suffered damage in the form of lost employee time, lost productivity and related costs and expenses, lost business, harm to reputation and business relationships, and attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

A. For entry of judgment and an award of damages as to each cause of action in an amount to be determined.

B. For a declaration that PolicyScout did not violate the Telephone Consumer Protections Act.

C. For an award of legal expenses, attorneys' fees and costs, and interest at the statutory rate; and

D. For such other legal and equitable relief as determined to be just and proper by the Court, including punitive damages for Human's intentional misrepresentations and inducement.

DATED this 11th day of October 2023.

                                    **CAMERON RINGWOOD, LC**

                                    /s/ Jordan K. Cameron
                                    Jordan K. Cameron

                                    *Attorneys for Plaintiff*

Plaintiff's Address

c/o Cameron Ringwood, LC
6975 S Union Park Ave, Suite 600
Cottonwood Heights, UT 84047